UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anthony C. Simmons and Nicole S. Simmons,

    Plaintiffs,

v.                                                                                          Civil No. 09-162 (JNE/JJG)
                                                   ORDER

Mortgage Electronic Registration Systems, Inc.;
Fremont Investment & Loan, Inc.; and Wells
Fargo Bank, N.A. d/b/a America's Servicing
Company,

    Defendants.

---

Theresa A. Peterson, Esq., Huemoeller, Bates & Gontarek PLC, appeared for Plaintiffs Anthony C. Simmons and Nicole S. Simmons.

Gregory M. Erickson, Esq., Mohrman & Kaardal, P.A., appeared for Defendants Mortgage Electronic Registration Systems, Inc., and Wells Fargo Bank, N.A. d/b/a America's Servicing Company.

---

Alleging violations of the Truth in Lending Act (TILA) and Minnesota's foreclosure-by-advertisement statute, Anthony Simmons and Nicole Simmons brought this action in state court against Mortgage Electronic Registration Systems, Inc. (MERS); Fremont Investment & Loan, Inc. (Fremont); and Wells Fargo Bank, N.A. d/b/a America's Servicing Company (ASC). Fremont, MERS, and ASC removed the action from state court. After the removal, the Court dismissed the Simmonses' claims against Fremont pursuant to a stipulation. The remaining defendants, MERS and ASC, now move for summary judgment. For the reasons set forth below, the Court grants their motion.

## I. BACKGROUND

The Simmonses own and reside at property located in Apple Valley, Minnesota. In 2006, they decided to refinance their first and second mortgages. At the closing on March 24, 2006,

1

they executed several documents as part of the refinancing. Nicole Simmons executed an Adjustable Rate Note. Under the Note, she borrowed $300,000 from Fremont and agreed to repay the principal amount plus interest over thirty years. The interest rate was fixed for the first two years and subject to change every six months thereafter. To secure the Note, the Simmonses executed a Mortgage that identified them as "Borrower"; Fremont as "Lender"; and MERS, "acting solely as a nominee for Lender and Lender's successors and assigns," as "mortgagee." ASC is the servicer of the loan. The Simmonses also acknowledged a Truth in Lending Disclosure Statement and a Notice of Right to Cancel by signing the same.

At the closing on March 24, the Simmonses did not receive copies of any of the documents they signed. Six days after the closing, they received copies of the closing documents, including the Truth in Lending Disclosure Statement and the Notice of Right to Cancel.

After making payments on the loan for approximately two years, the Simmonses missed payments in 2008. In letters dated June 15, 2008, and July 13, 2008, ASC notified Nicole Simmons of the delinquent payments. The Simmonses unsuccessfully sought to modify the loan.

Later in 2008, foreclosure proceedings were initiated. On September 30, 2008, MERS signed a Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. By letter dated October 2, 2008, an attorney notified the Simmonses that ASC had asked the attorney to commence a foreclosure proceeding. On October 9, 2008, the Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage was recorded, and a Notice of Mortgage Foreclosure Sale was allegedly served on the Simmonses by handing it to Anthony Simmons's sister, who was visiting from out of state, at the Simmonses' house. The foreclosure sale was scheduled to take place on December 4, 2008.

On October 11, 2008, the Simmonses sent a Notice to Rescind to ASC. By letter dated November 10, 2008, ASC, after conferring "with the responsible parties," denied their demand for rescission.

In December 2008, the Simmonses brought this action in state court. They alleged violations of TILA and Minnesota's foreclosure-by-advertisement statute. The December 4 foreclosure sale was postponed. In January 2009, MERS, Fremont, and ASC removed the action from state court. MERS and ASC now move for summary judgment.

## II.　　DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and it must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.　　Truth in Lending Act**

In Count I of their Complaint, the Simmonses claim that MERS and ASC violated TILA. Specifically, the Simmonses allege that MERS made improper disclosures in connection with the

3

refinancing such that the Simmonses had a right to rescind for three years after the loan's closing; that the Simmonses exercised their right to rescind by sending to ASC a notice of rescission; that ASC in turn forwarded the notice of rescission to MERS; and that neither ASC nor MERS has taken any action to effectuate the rescission. The United States Court of Appeals for the Eighth Circuit recently summarized the law applicable to the Simmonses' TILA claim:

> TILA was passed by Congress as a consumer protection act, and its provisions, as well as Regulation Z, are remedial legislation, to be construed broadly in favor of consumers. "[A]lleged violations of TILA are subject to an objective standard of review. Courts have applied such an objective standard regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds."
>
> Under TILA, if a loan is secured by a debtor's primary residence, "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . whichever is later." Further, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." Notice must be provided "on a separate document that identifies the transaction and . . . clearly and conspicuously discloses" the debtor's rights. A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction.

*Rand Corp. v. Moua*, 559 F.3d 842, 845-46 (8th Cir. 2009) (citations omitted); *see* 15 U.S.C. § 1635 (2006); 12 C.F.R. § 226.23 (2009).

MERS and ASC assert that summary judgment on the Simmonses' TILA claim should be granted because: (1) neither MERS nor ASC is a proper party to the claim because neither is a "creditor," *see* 15 U.S.C. § 1602(f) (2006) (amended 2008); (2) even if MERS or ASC is an "assignee," neither MERS nor ASC is liable for statutory damages because no TILA violation is apparent on the face of the TILA disclosures, *see id.* § 1641(e); (3) ASC is not a proper party to the claim because it is a loan servicer, *see id.* § 1641(f); and (4) even if MERS or ASC is a proper party to the claim, there is no evidence of a TILA violation. As the parties have focused

4

on the issue of whether there is any evidence of a TILA violation, the Court turns to that argument.

The Simmonses contend that the failure to provide them copies of the Truth in Lending Disclosure Statement and the Notice of Right to Cancel at the closing on March 24 violated TILA such that they had a right to rescind for three years. TILA provides for a right to rescind "until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, *whichever is later*." 15 U.S.C. § 1635(a) (emphasis added); *see* 12 C.F.R. § 226.23(a)(3) ("The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the [notice of right to rescind], or delivery of all material disclosures, whichever occurs last." (footnote omitted)). Thus, TILA contemplates delivery of the required disclosures and forms at a time other than the consummation of the transaction. If such delivery does not take place at all, then a right to rescind exists for three years after the transaction's consummation. 15 U.S.C. § 1635(f) (stating that the right to rescind "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor"); 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."). In this case, it is undisputed that the closing took place on March 24, 2006, and that the Simmonses received copies of the Truth in Lending Disclosure Statement and the Notice of Right to Cancel on March 30, 2006.

The alleged failure to provide the Simmonses copies of the Truth in Lending Disclosure Statement and the Notice of Right to Cancel at the closing did not give rise to a right to rescind for three years given the delivery of the copies of those documents to the Simmonses six days after the closing.

The Simmonses also maintain that the disclosure of their right to rescind violated TILA because the disclosure was misleading and confusing. TILA requires a clear and conspicuous disclosure of the right to rescind. 15 U.S.C. § 1635(a) ("The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section."). Regulation Z details how to disclose the right to rescind:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
>> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>>
>> (ii) The consumer's right to rescind the transaction.
>>
>> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>>
>> (iv) The effects of rescission, as described in paragraph (d) of this section.
>>
>> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1). "To satisfy the disclosure requirements of [12 C.F.R. § 226.23(b)(1)], the creditor shall provide the appropriate model form in Appendix H of this part or a substantially similar notice." *Id.* § 226.23(b)(2).

In this case, it is undisputed that the Simmonses received the Notice of Right to Cancel on March 30, 2006. The notice provides in part:

YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien, or security interest on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last:

(1) the date of the new transaction, which is 3/24/06; or

(2) the date you received your new Truth in Lending disclosures; or

(3) the date you received this notice of your right to cancel.

. . . .

HOW TO CANCEL

. . . .

If you cancel by mail or telegram, you must send the notice no later than midnight of 3/28/06 (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

The notice is essentially identical to Model Form H-8. *See id.* pt. 226 app. H-8.

The Simmonses maintain that the notice failed to clearly and conspicuously disclose the date the rescission period expired. According to the Simmonses, the notice is misleading and confusing because it is contradictory. The Simmonses discern a contradiction in (1) the statement that they had the right to cancel within three business days from the date they received their new Truth in Lending disclosures and (2) the statement that they must send their cancellation no later than midnight on March 28, 2006. They claim it would be reasonable to assume that they no longer had a right to cancel when they received the copies of their closing documents on March 30, 2006.

7

An objectively reasonable reading of the notice indicates that the notice clearly and conspicuously discloses the date the Simmonses' rescission period expired. *See Palmer v. Champion Mortgage*, 465 F.3d 24, 27-29 (1st Cir. 2006). The notice plainly provides that the Simmonses had the right to cancel "within three business days from whichever of [three enumerated events] occur[s] last." Later, as the Simmonses observe, the notice indicates that they had to send their cancellation by midnight on March 28, 2006. The Simmonses, however, fail to acknowledge the parenthetical that immediately follows the March 28 deadline: "(or midnight of the third business day following the latest of the three events listed above)." The notice plainly discloses alternative deadlines. An objectively reasonable reading of the notice reveals that the contradiction perceived by the Simmonses does not exist. *See id.* at 29 ("We fail to see how any reasonably alert person—that is, the average consumer—reading the Notice would be drawn to the April 1 deadline without also grasping the twice-repeated alternative deadlines."). Accordingly, the Court rejects the Simmonses' argument that the notice failed to clearly and conspicuously disclose the date their rescission period expired.

In short, the Simmonses' refinancing closed on March 24, 2006. Six days later, they received copies of their Truth in Lending Disclosure Statement and the Notice of Right to Cancel. The Notice of Right to Cancel clearly and conspicuously disclosed the date their rescission period expired. The Simmonses attempted to rescind in October 2008, long after the expiration of their rescission period. Accordingly, the Court grants MERS and ASC summary judgment on the Simmonses' TILA claim. The Court declines to consider the parties' remaining arguments related to this claim.

### B. Foreclosure by Advertisement

In Count II of their Complaint, the Simmonses allege that the Notice of Mortgage Foreclosure Sale was not properly served such that the foreclosure sale scheduled to take place on December 4, 2008, if not postponed, would be invalid. *Cf.* Minn. Stat. § 580.03 (2008) (requiring notice of foreclosure sale to "be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied"). It is undisputed that the foreclosure sale scheduled to take place on December 4 was postponed.[1] At the motion hearing, the Simmonses acknowledged that the issues raised in Count II have been redressed. The Court dismisses this claim as moot. *Cf. Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (en banc) (summarizing mootness doctrines).

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Motion for Summary Judgment filed by Mortgage Electronic Registration Systems and Wells Fargo Bank d/b/a America's Servicing Company [Docket No. 22] is GRANTED.

2. As to Mortgage Electronic Registration Systems and Wells Fargo Bank d/b/a America's Servicing Company, Count I is DISMISSED WITH PREJUDICE.

3. As to Mortgage Electronic Registration Systems and Wells Fargo Bank d/b/a America's Servicing Company, Count II is DISMISSED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 2, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[1] No foreclosure sale has since taken place.